504 A.2d 405

Diane Vasquez, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued November 12, 1985, before Judges ROGERS and BARRY, and Senior Judge BLATT, sitting as a panel of three.

*Susan Wood,* for petitioner.

*Jeffrey P. Schmoyer,* with him, *John Kane* and *Jean E. Graybill,* Assistant Counsel, for respondent.

OPINION BY JUDGE ROGERS, February 4, 1986:

Diane Vasquez (petitioner) has filed a petition for review of an order of the Department of Public Welfare (DPW) affirming the decision of a hearing examiner denying her public assistance during the period of time between her pre-screen interview on October 10, 1984 and October 16, 1984, the date on which her application for assistance was approved by her County Assistance Office (CAO).

The petitioner applied to her CAO for assistance for herself and her four children under the Aid to Families with Dependent Children (AFDC) program. Upon receiving the petitioner's application form, the CAO scheduled a pre-screen interview for the petitioner on October 10, 1984.

At the pre-screen interview, a case worker informed the petitioner that she would need to verify certain qualifying circumstances by the time of her application interview, which was then scheduled for October 16, 1984. The petitioner obtained the required verifications on October 10, and on that day took them to the CAO together with a letter from her lawyer requesting that the petitioner be authorized for assistance immediately. The CAO did not comply with the request and informed the petitioner that she would have to wait for her application interview on October 16 when the application process would be completed.

At the application interview on October 16, the petitioner signed an application form. The CAO determined that the petitioner was eligible for assistance, effective October 16.

The petitioner appealed the CAO's order fixing her entitlement to assistance from October 16 to the DPW, contending that since she had met all conditions of eligibility on October 10, her assistance should commence on that date. After a hearing, the DPW examiner denied the appeal and the DPW affirmed. This appeal followed.

AFDC is a Federally financed program and State laws and regulations must conform to Federal laws and regulations. The petitioner contends that DPW's regulations violate Federal laws and regulations. The pertinent State, or DPW, regulations are found at Title 55 of the Pennsylvania Code:

§125.24. Procedures.

. . . .

(b) *Pre-screen interview.* The worker will prescreen each applicant prior to an application interview. The purposes of the prescreen interview are as follows:

(1) To explain that an individual applying for assistance shall complete an application containing information required to establish eligibility and the amount of the grant. . . .

(2) To make certain the application form is complete and that the information provided accurately represents what the applicant wants to say about his circumstances. . . .

(3) If the application form is not complete or substantiating evidence is required, prompt action will be taken to obtain the needed information.

(4) To determine whether the information provided needs substantiation and what, if any, additional information or substantiating evidence is needed to establish eligibility.

(5) To explain that as a condition of eligibility for assistance, all applicants and recipients of assistance shall cooperate with the Department in providing and verifying information necessary for the Department to determine initial or continued eligibility.

(6) To inform the applicant of the conditions of eligibility which must be met and of the factual information necessary to establish that each condition will be met. . . .

. . . .

(9) To schedule the application interview within 13 days of the date of receipt of an application.

Exception: If a determination can be made at this point that the client is clearly ineligible, the application will be disposed of in accord with subsection (c)(7)·(viii)(B) unless the client requests an application interview.

(c) *The application interview. The application interview must be held within 13 days of the date the County Assistance Office receives the completed, signed application form.* The interview will be conducted in accordance with the following principles:

(1) The facts necessary for a decision on eligibility are assembled at the application interview. *The maximum lapse of time between the receipt of a completed, signed application and authorization of the first assistance payment or other disposition of the application will be 15 days.* . . . (Emphasis added.)

. . . .

(6) A client will be informed that he has a right to appeal to, and have a fair hearing before, the State office of the Department of Public Welfare, if he is dissatisfied with any agen-

cy action or failure to act in respect to assistance.

(7) The application interview will conform with the following:

. . . .

(v) A decision concerning the applicant's eligibility will be made without delay based on the verification factors and information provided by the applicant. *A decision on eligibility must be made within 15 days of the receipt of the completed, signed form. . . .* (Emphasis added.)

§225.22. Definitions.

Effective date—The date on which an action is to take place.

(i) *The effective date of an initial grant will be the date the applicant meets the eligibility conditions, which will be the first day covered by the grant, as set forth in §225.24 (relating to procedures).* (Emphasis added.)

§225.24. Procedures.

. . . .

(c) *Initial grants.* Initial grants will be as follows:

1. AFDC grants will be as follows:

(i) *Assistance will begin on or after the date the decision is made that the applicant is or will be eligible. At the earliest, this will be the date the authorization,* Form PA 122 or Form PA 122-E, *is certified.* At the latest, it will be the second regular payment day *after the applicant is determined to be eligible. . . .* (Emphasis added.)

The provision of the Social Security Act (of which AFDC is a part), upon which the petitioner relies, is 42 U.S.C. §602(a)(10)(A), which provides that State plans for aid and services to needy families with chil-

dren must "provide that all individuals wishing to
make application for aid to families with dependent
children shall have opportunity to do so. . . ." The
regulation promulgated by the Department of Health
and Human Services, which is found at 45 C.F.R.
§206.10 (1984), is as follows:

> (a) *State plan requirements.* A State
> plan . . . shall provide that:
> (1) *Each individual wishing to do so shall
> have the opportunity to apply for assistance
> under the plan without delay. . . .* (Emphasis
> added.)
>
> . . . .
> (3) *A decision shall be made promptly on
> applications, pursuant to reasonable State-es-
> tablished time standards not in excess of:*
> (i) *45 days for . . . AFDC. . . .* (Emphasis
> added.)
> (ii) . . . Under this requirement, the appli-
> cant is informed of the agency's time standard
> in acting on applications which covers the time
> from date of application under the State
> plan to the date that the assistance check, or
> notification of denial of assistance or change of
> award is mailed to the applicant or recipient.
> *The State's time standards apply* except in un-
> usual circumstances (*e.g.*, where the agency
> cannot reach a decision because of failure or
> delay on the part of the applicant or an exam-
> ining physician, or because of some administra-
> tive or other emergency that could not be con-
> trolled by the agency), in which instances the
> case record shows the cause for the delay. The
> agency's standards of promptness for acting on
> applications or redetermining eligibility shall
> not be used as a waiting period before grant-
> ing aid, or as a basis for denial of an applica-

tion or for terminating assistance. (Emphasis added.)

. . . .

(6) *Assistance shall begin as specified in the State plan, which:*

    (i) For financial assistance.

    (A) *Must be no later than:*

    (1) The date of authorization of payment, or

    (2) *Thirty days in [the case of] AFDC . . . . from the date of receipt of a signed and completed application form,* whichever is earlier: *Provided,* that the individuals then met all the eligibility conditions, and . . . .

    (C) In AFDC, for purposes of *Federal financial participation, may be* as early as the date of application provided that the assistance unit meets all the eligibility conditions. . . . (Emphasis added.)

. . . .

(8) Each decision regarding eligibility or ineligibility will be supported by facts in the applicant's or recipient's case record. Under this requirement each application is disposed of by a finding of eligibility or ineligibility. . . .

The petitioner argues that "[b]y requiring [her] to wait for a second interview in order to again sign an application after she had already applied for assistance and established her eligibility, the CAO denied her the opportunity to apply for assistance without delay" in violation of the Federal law and regulation, which we reproduced above.

While the Federal regulation at 45 C.F.R. §206.10 (a) says that applicants shall have the opportunity to apply without delay, §§206.10(a)(6)(i)(A)(1), (2), provides that "without delay" means that assistance shall begin no later than the date of authorization or

thirty days from the date the CAO received a signed and completed application form, whichever is earlier, provided that the applicant then met all the eligibility conditions. Here, the CAO determined that the petitioner met the eligibility conditions on October 16, and authorized her to receive financial assistance on that day, which was only twelve days after the CAO received her application, well within the thirty days mandated by the Federal regulation and also within the fifteen days mandated by the State regulation at 55 Pa. Code §125.24(c)(7)(v). Accordingly, we believe that DPW's regulations do comport with the Federal law and regulation.

The petitioner also argues that she met the eligibility conditions for assistance on October 10 and should have been authorized for assistance as of that date in accordance with 55 Pa. Code §225.22. We disagree. 55 Pa. Code §225.22 does not provide that assistance shall be given as of the date when the applicant produces all proof required to establish her eligibility but refers us to 55 Pa. Code §225.24 which says that assistance will begin on the date the decision has been made that the applicant is eligible and assistance has been authorized by the competent administrative authorities.

The State's requirements are reasonable in general and seem to us to have produced a reasonable result in this case. The petitioner mailed an application on October 2; CAO received it on October 4; she was interviewed on October 10 and informed of what further she should produce to show eligibility; her assistance began as of October 16, twelve days after the CAO had received her application.[1]

Order affirmed.

---

[1] DPW regulation at 55 Pa. Code §229.24(a)(2) provides for disbursement of cash by the county in cases of critical need. The petitioner has not claimed she was entitled to this form of assistance.

ORDER

AND NOW, this 4th day of February, 1986, the order of the Department of Public Welfare in the above-captioned matter is hereby affirmed.

---

DISSENTING OPINION BY JUDGE BARRY:

In *Dickson v. Department of Public Welfare*, 94 Pa. Commonwealth Ct. 88, 503 A.2d 86 (1986), the DPW applicant was denied food stamp benefits because she withdrew her application in frustration after four interviews within a forty-five day period. Despite producing all the verifications necessary to establish her eligibility for benefits contrary to the DPW regulations, she was told, at her fourth interview, that she had reassumed her status as an initial applicant and must apply again and return for a fifth interview for eligibility determination. We found her withdrawal to be involuntary under these circumstances. We reversed and granted benefits on the basis that the CAO's conduct was in contradiction to the DPW regulations. Had the CAO treated her as one whose application was in process, as the regulations dictate, the verifications she presented at the fourth hearing would have made her eligible "on the spot". We said:

> The purpose of a follow-up interview . . . is to give the applicant an opportunity to provide verification. If the applicant has the required verification on hand at the time of his initial appointment, then a follow-up interview is obviously not necessary. To automatically require a follow-up interview as a matter of policy frustrates the implementation of the food stamp program.

*Id.* at 92, 503 A.2d at 88. Notwithstanding the factual differences between the case before us and *Dickson,*

I feel the principle enunciated in *Dickson* should be applied here. I find no justifiable reason for not permitting the benefits retroactively to the date the applicant provided the necessary information. The applicant had submitted her application and attended an appointment. She subsequently produced verification and had met all the substantive requirements for eligibility. She was told by the CAO that she would be eligible but was not entitled to benefits until she participated in yet one more bureaucratic formality. In *Travis v. Department of Public Welfare*, 2 Pa. Commonwealth Ct. 110, 277 A.2d 171 (1971), *aff'd*, 445 Pa. 622, 284 A.2d 727 (1971), Judge CRUMLISH said in his Concurring Opinion:

> [A]ll too often in the administration of the Commonwealth's programs designed to benefit its citizens, the needs of these beneficiaries give way to the strict adherence to agency policies and guidelines. The very people engaged to aid the disadvantaged are hindered in the best performance of their duties by the unnecessary rigidity of the decision making apparatus inherent in the American bureaucracy. . . . This seems especially true in the area of public assistance.

> The implementation of public welfare systems in this country, including that in Pennsylvania, seem premised on the philosophy that each applicant should be channeled through to receive any 'handout' to which he or she can prove *entitlement*. This loses sight of the fact that welfare is not a 'hand-out' system but a program designed to *rehabilitate* or maintain those persons not able to rehabilitate or maintain themselves. By doing this, we hope to enhance the public welfare of the *entire* nation.

But rehabilitation and economic and social stability cannot be channeled through rigid programs. It must be the purpose of every welfare agency in this country to attack and solve the problems of every disadvantaged *individual*. (Emphasis in original.)

*Id.* at 118-19, 277 A.2d at 175. The fact that provisions exist, 52 Pa. Code §229.24(a)(2), to help applicants in emergency situations is irrelevant. The applicant does does not claim she was in an emergency situation, only that she was in need. If she had claimed and qualified for emergency benefits she would have been afforded a cash grant effective immediately. She did not claim an emergency; hence not only were no cash benefits advanced but benefits themselves were not even effective from that date. For no apparent reason, they were deemed effective from the date of the eligibility interview despite DPW's awareness that she earlier proved eligibility. I feel this is senseless. The fact that it is not an emergency does not diminish the essential necessity of the benefits to applicant and her family. The crucial determination is the applicant's eligibility which entails basically, a verification of identification and a showing of necessity. Once that is established the applicant must be entitled to benefits effective from that point. Adopting this position would not interfere in the least with the DPW processing regulations which require that an applicant actually receive the funds within a specified period after entitlement is established. Prescreen and follow-up interviews will continue to be necessary for the less informed, ill prepared or more limited applicants but for those who establish their eligibility on their initial appointment there is no reason, other than blind adherence to agency form, to delay the entitlement date to the date of an unnecessary eligibility interview.